UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-20242-CR-ALTONAGA

UNITED STATES OF AMERICA,

    Plaintiff,
v.

MARK SCOTT GRENON,
JONATHAN DAVID GRENON,
JORDAN PAUL GRENON, and
JOSEPH TIMOTHY GRENON,

    Defendants.
_____/

**ORDER**

**THIS CAUSE** came before the Court on the Government's Motion *in Limine* [ECF No. 155], filed on May 5, 2023. Defendants, Mark Scott Grenon, Jonathan David Grenon, Jordan Paul Grenon, and Joseph Timothy Grenon — proceeding *pro se* and refusing to accept service of the Government's Motion[1] — have not filed a response.[2] The Court has carefully reviewed the Motion and applicable law. For the following reasons, the Motion is granted in part and denied in part.

**I. BACKGROUND**

Defendants are accused of participating in a conspiracy to defraud the United States by manufacturing, marketing, and distributing an unlicensed drug — Miracle Mineral Solution

---

[1] *See* Notice [ECF No. 156].

[2] While the failure to file a response may be sufficient ground for the Court to grant the Motion, the "failure to file any opposition does not automatically mean that the Motion is due to be granted." *Oatis v. City of Gadsden*, No. 4:16-cv-1264, 2017 WL 1649973, at *2 (N.D. Ala. May 2, 2017). Further, "district courts possess broad discretion to admit evidence[,]" *United States v. Sanders*, 663 F. App'x 781, 783 (11th Cir. 2016) (alteration added; citation omitted), as well as an independent duty to guide the admission of evidence at trial, *see, e.g.*, Fed. R. Evid. 103. In that spirit, the Court addresses the Government's requests.

("MMS") — that was not approved by the Federal Drug Administration (the "FDA") and was being distributed in violation of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. section 301 (the "FDCA"). (*See generally* Indictment [ECF No. 16]). Defendants are members of Genesis II Church of Health and Healing ("Genesis"), which the Government alleges is "an explicitly non-religious entity that [Defendant, Mark Scott Grenon] co-founded[.]" (*Id.* 5 (alterations added)).[3] Under the guise of Genesis, Defendants promoted MMS as a miracle cure to various illnesses and ailments, even though "[w]hen ingested orally as directed by [] Defendants, MMS became chlorine dioxide, a powerful bleaching agent typically used for industrial water treatment or bleaching textiles, pulp, and paper." (Mot. 2 (alterations added)).

Seeking to halt this violation of the FDCA, the Government first filed a civil action against Defendants and Genesis in *United States v. Genesis II Church of Health and Healing*, No. 20-cv-21601 (S.D. Fla. 2020). (*See* Indictment 6–7). In that civil case, the court entered a temporary restraining order, and then a preliminary injunction, enjoining Defendants' distribution of MMS. (*See id.*). Despite those court orders, Defendants continued to distribute and promote MMS. (*See generally id.*). The Government now charges Defendants with conspiracy to defraud and commit offenses against the United States, in violation of 18 U.S.C. section 371, for their conspiracy to violate the FDCA by introducing into interstate commerce an unapproved and misbranded new drug (Count I); and two charges of criminal contempt for their failure to comply with the civil court orders, in violation of 18 U.S.C. section 401(3) (Counts 2 and 3). (*See id.* 7–14).

## II. DISCUSSION

The Government seeks to exclude seven categories of evidence at trial, stating the potential evidence "is irrelevant to the charges against [Defendants] or based upon legally insufficient

---

[3] The Court relies on the pagination generated by the Case Management/Electronic Case Files system, which appears in the header on all filings.

defenses." (Mot. 1 (alteration added)). For the most part, the Motion is due be denied, although limited aspects of the Government's requests are granted. The Court addresses each of the categories of evidence below.

    1.    *Raising a defense under the Free Exercise Clause*

The Government first seeks to prevent Defendants from suggesting that their conduct was "a religious exercise, constitutionally protected under the First Amendment." (Mot. 6); *see also* U.S. Const. amend. I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" (alteration added)). The Government asserts that Defendants' distribution of MMS was not an "actual religious exercise[;]" even if it was valid religious conduct, that conduct would not be protected by the First Amendment. (Mot. 6 (alteration added)). Accordingly, the Government asks that Defendants be precluded "from invoking the First Amendment as a defense[.]" (*Id.* 8 (alteration added)).

The Government is indeed correct that "a jury should not be burdened with testimony regarding a defense where that defense has already been determined to be legally insufficient." *United States v. Anderson*, 872 F.2d 1508, 1516 n.12 (11th Cir. 1989) (citation omitted); (*see* Mot. 8). And Supreme Court precedent makes clear that "the Free Exercise Clause 'does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." (Mot. 6–7 (quoting *Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 879 (1990)). But the Government's recitation of Free Exercise jurisprudence (*see id.* 6–9) does not convince the Court that it should, at this stage, preclude Defendants from discussing their religious beliefs, nor is the Court willing to exclude references to the First Amendment — notably, Defendants have not yet indicated they might even assert a defense under the Free Exercise clause.

CASE NO. 21-20242-CR-ALTONAGA

Furthermore, considering the Government's accusations regarding Defendants and Genesis (*see generally* Indictment), it would likely be impossible to conduct this trial without discussion of Defendants' alleged religion, as well as their personal beliefs regarding the First Amendment (*see also* Mot. 2–3 (accusing Defendants of utilizing religious protections to shield their distribution of MMS)). And the Government's concern that Defendants might "confuse the jury into believing [they] had a constitutional right to violate the law" (Mot. 9 (alteration added)), strikes the Court as far-fetched — surely there is no a risk of substantial prejudice or confusion under Federal Rule of Evidence 403, particularly as the Government seems readily prepared to rebut any of Defendants' claims regarding their religious beliefs (*see, e.g.*, Mot. 2–3 (describing Government's evidence that Genesis was a false church created to protect the distribution of MMS)).

Finally — and perhaps most problematically — the Government does not identify a single piece of *specific* evidence it seeks to exclude, but rather asks the Court to sanction a general ban on references to the First Amendment and its ability to protect certain religious conduct. (*See generally* Mot.). Simply put, this goes too far. *See Holley v. Carnival Corp.*, No. 20-cv-20495, 2021 WL 5299836, at *4 (S.D. Fla. Nov. 15, 2021) ("To be appropriate, motions *in limine* should address specific pieces of evidence[.]" (alteration added; citation omitted)). Therefore, this request is denied. The Government's objections are better left for trial.

2. *Raising a defense under the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb*

The Government next asks the Court to preclude any argument from Defendants raising a defense under the Religious Freedom Restoration Act, 42 U.S.C. section 2000bb ("RFRA"). (*See* Mot. 9–17). As with the hypothetical defense under the First Amendment, Defendants have not

4

actually indicated they will be asserting a RFRA defense. Nevertheless, the Government seeks to preemptively remove the defense and any reference to it by Defendants. (*See id.*).

To the extent the Government moves merely to prevent Defendants from putting the question of whether the RFRA applies to the jury, its request is granted. "[W]hether the RFRA applies is a 'pure question of law,'" and "the determination of pure questions of law in criminal cases [is] not the province of the jury." *United States v. Duncan*, 356 F. App'x 250, 253 (11th Cir. 2009) (alterations added; citations omitted). Consequently, courts should deny a "requested jury instruction" on a RFRA defense. *Id.* at 254.

But aside from restating what defenses are — or are not — appropriately put to the jury, the Court need go no farther. As explained, Defendants have not sought to raise a defense under the RFRA, whether by filing a motion to dismiss the Indictment under Federal Rule of Criminal Procedure 12(b) or otherwise. *See United States v. Kelly*, No. 2:18-cr-22, 2019 WL 5077546, at *18 n.29 (S.D. Ga. Apr. 26, 2019) (noting that "[i]t is appropriate for the Court to consider Defendants' RFRA defense in the context of a Rule 12(b) motion to dismiss" (alteration added)). Even if they had, the Government's request for a general prohibition on "evidence or argument in furtherance of a RFRA defense" (Mot. 17), asks for too much, *see Holley*, 2021 WL 5299836, at *4.

It appears that the Government is requesting the Court resolve certain evidentiary questions, such as the sincerity of Defendants' beliefs. (*See* Mot. 11 ("Defendants cannot come close to meeting [the] burden [of establishing a RFRA claim], because their *purported* religious beliefs regarding MMS are not sincerely held." (emphasis added))). The Court will not make such determinations on a motion *in limine*. *See United States v. Stevens*, No. 20-20270-cr, 2022 WL 2704522, at *11 (S.D. Fla. May 2, 2022), *report and recommendation adopted*, No. 1:20-cr-20270,

2022 WL 2702658 (S.D. Fla. July 12, 2022) (noting, in a criminal fraud case, that the "[d]efendant may present a defense that she was simply pursuing her religious practices, which may be antithetical with criminal intent . . . [b]ut that is a matter for trial" (alterations added)); *see also Soliday v. 7-Eleven, Inc.*, No. 2:09-cv-807, 2011 WL 1837807, at *1 (M.D. Fla. Apr. 20, 2011) (noting that a motion *in limine* should not be used "to determine the sufficiency of the evidence or merits of an issue" (citation omitted)).

This request is therefore granted in part — Defendants may not put the question of a RFRA defense to the jury. But the Court will not, at this time, bar any evidence which might have the effect of furthering such a defense, so long as it otherwise meets appropriate grounds for relevance and admissibility. *See Seifert v. SF&P Advisors, Inc.*, No. 19-cv-80877, 2021 WL 2915351, at *1 (S.D. Fla. July 12, 2021) ("[I]f evidence is not clearly inadmissible, evidentiary rulings must be deferred until trial to allow questions regarding foundation, relevancy, and prejudice." (alteration added; citation and quotation marks omitted)).

    3.    *Evidence regarding the safety or effectiveness of MMS*

The Government next asks the Court to "preclude [] Defendants from offering anecdotal or testimonial evidence regarding the safety or effectiveness of MMS." (Mot. 20 (alteration added)). According to the Government, anecdotal evidence is irrelevant. (*See id.*). The Court does not share the Government's narrow view of relevancy.

The Government begins by explaining that "[t]here is only one issue in this case on which evidence of MMS's safety and effectiveness is relevant: whether [] Defendants conspired to violate the FDCA by introducing into interstate commerce an unapproved new drug, as charged in Count 1." (Mot. 18 (alterations added; citing Indictment 7)). At first glance, this would seem to render the Government's request plainly inappropriate. If "evidence of MMS's safety and effectiveness

6

is relevant" to this case (*id.*), and the Government intends to present its own evidence that MMS is in fact not safe and effective (*see, e.g.*, *id.* 27 (noting "the dangerousness of MMS"), it would make little sense to prevent Defendants from offering their own rebuttal evidence, *see Peace United, Ltd. v. 1906 Collins, LLC*, No. 17-21881-Civ, 2022 WL 2802796, at *4 (S.D. Fla. July 18, 2022) ("A motion *in limine* is not an appropriate vehicle to resolve conflicting evidence." (citation omitted)).

Undeterred, the Government points to the standards under which a "new drug" is considered "unapproved" and is thus distributed in violation of the FDCA. (Mot. 18). The FDCA bars the distribution of drugs, like MMS, that are not "generally recognized as safe and effective ('GRASE') under the proposed conditions of use." (*Id.*). And because the Supreme Court instructs that "[a]necdotal evidence regarding safety and effectiveness cannot establish that a new drug is GRASE[,]" the Government insists that Defendants' anecdotal evidence is irrelevant. (*Id.* 19–20 (alterations added; discussing *Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609 (1973))).

The Government confuses whether a fact is dispositive with whether that fact is relevant. Anecdotal evidence, standing alone, may be insufficient to establish that a drug is GRASE. *See United States v. Sene X Eleemosynary Corp.*, 479 F. Supp. 970, 977 (S.D. Fla. 1979). But the Court will not prematurely exclude all such evidence, particularly as Defendants' claims regarding the safety of MMS are central to the Government's theory of prosecution. (*See, e.g.*, Indictment 8 (explaining that Defendants "claimed that MMS could be used to treat, prevent, and cure a variety of serious diseases and disorders")). Should the Government remain worried about potential hypothetical evidence, it remains free to request appropriate instructions to the jury.

(*See* Mot. 20 (citing past-used jury instructions regarding anecdotal evidence in *United States v. Vanmoor*, 06-cr-60064 (S.D. Fla. 2009))).

Putting aside the issue of GRASE, the Government further speculates that the admission of anecdotal "evidence would open the door to a potential parade of lay defense witnesses[.]" (Mot. 18 (alteration added)). The Court does not share those concerns — Defendants have already been warned that the names of any witnesses they intend to present must be provided to the Government "no later than the calendar call scheduled for June 27, 2023" and that "the Court may disallow any undisclosed witnesses from testifying at trial." (June 1, 2023 Order [ECF No. 162] 1 (emphasis omitted)). Should Defendants proffer witnesses, the Government will have ample time to prepare its objections and rebuttal evidence — indeed, the Government's contention that these potential defense witnesses "have been duped" suggests the Government is already well-prepared. (Mot. 18). Further, a "parade of lay defense witnesses" (*id.*) providing similar testimony might eventually run afoul of Federal Rule of Evidence 403. But the Court cannot make that determination at this juncture; accordingly, this request is denied, and the Government's objections are better left for trial. *See Seifert*, 2021 WL 2915351, at *1.

    4.    *Evidence regarding Defendants' lack of intent to cause harm*

Next, the Government seeks to prevent Defendants from arguing "that they did not intend to harm anyone by distributing MMS." (Mot. 21). The Government admits that Defendants have provided no indication that they will actually argue this at trial; rather, the Government seeks to preclude this evidence "[b]ased upon [Defendants'] public statements[.]" (*Id.* (alterations added)).

Certainly, the Government is correct that whether Defendants intended to harm individuals by their distribution of MMS is irrelevant to the question whether Defendants intended "to defraud or mislead the FDA" or whether they willfully violated "a court order[.]" (*Id.* (alteration added;

collecting authority)). Putting aside the Government's reductive rendering of the issues, however, there are other avenues for the relevance of this information.

For example, the Government's Motion — to say nothing of the entire substance of the Indictment — makes clear that the Government intends to present evidence regarding both the alleged dangers of MMS, as well as Defendants' knowledge of such. (*See, e.g.*, *id.* 21 (explaining the Government's belief that Defendants' lack of intent to harm is "false"); *id.* 27 ("The idea of a 'greater good' defense in this case is particularly absurd given the dangerousness of MMS and the profits that [] Defendants knowingly reaped from the scheme." (alteration added))). It makes little sense to allow the Government to present its own version of events yet prevent the ability of Defendants to respond.

Furthermore, the Government, once again, asks the Court to exclude hypothetical, general categories of evidence. *See Holder v. Anderson*, No. 3:16-cv-1307, 2018 WL 4956757, at *1 (M.D. Fla. May 30, 2018) ("Motions *in limine* should be limited to specific pieces of evidence[.]" (alteration added; citations omitted)). And so, the Court, once again, declines to take the Government up on its offer. This request is denied.

     5.    *Evidence regarding alleged corruption of the FDA or pharmaceutical industry*

The Government voices its concern that Defendants will assert "that both the FDA and the pharmaceutical industry are corrupt and in cahoots to deny the public access to cheaper and more effective drugs" like MMS, and "the instant prosecution is in furtherance of that plan." (Mot. 21–22). As with the other arguments the Government makes in its Motion, Defendants have not

indicated that they intend to present such a defense; rather, the Government intuits that they will based on their public statements. (*See id.* 22 n.3).

According to the Government, such evidence "is plainly irrelevant to the charges in this case and should be precluded." (*Id.* 22). The Court is not persuaded by this conclusory assertion. This prosecution arises from Defendants' alleged violation of the FDA's authority to regulate the pharmaceutical industry and distribution of drugs. (*See* Indictment 10–12). Given the charges and crimes alleged, it is difficult to imagine how the Court might conduct a trial which excludes all "references to . . . prescription pharmaceuticals or the 'drug industry'/'Big Pharma' generally" (Mot. 22 (alteration added); *see generally* Indictment).

The Court is similarly unconvinced by the Government's fear of jury nullification. (*See* Mot. 23–24). Of course, "[t]he law is well settled that a jury cannot be encouraged to exercise the power of nullification." *United States v. Williams*, No. 17-14050-cr, 2017 WL 11607837, at *7 (S.D. Fla. Nov. 13, 2017) (alteration added; collecting cases). But the Government goes too far when it suggests that "[t]here is no reason" other than jury nullification "for the defense to be discussing any of those topics, or the pharmaceutical industry generally, at trial." (Mot. 22 (alteration added)).

Despite the lack of response from Defendants, the Court can envision permissible uses of this hypothetical evidence, such as to establish bias of the Government's witnesses. *See Sheffield v. State Farm Fire & Cas. Co.*, No. 5:14-cv-38, 2016 WL 3548550, at *8 (S.D. Ga. June 23, 2016) ("Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness [sic] testimony." (quoting *United States v. Abel*, 469 U.S. 45, 52 (1984))). Of course, any evidence that Defendants ultimately do offer, for bias or otherwise, "must be

10

relevant and is inherently subject to the [] limitations" of the Federal Rules of Evidence. *United States v. Jones*, 479 F. App'x 874, 877 (11th Cir. 2012) (alterations added). And the Government remains free at trial to raise its objections or request a limiting instruction, as appropriate. But the Court declines to preemptively exclude evidence which is not, on its face, "clearly inadmissible[.]" *Seifert*, 2021 WL 2915351, at *1 (alteration added).

Accordingly, this request is denied. The Government's objections are better suited for trial.

6.  *Evidence in furtherance of a "selective prosecution" defense*

The Government next seeks to bar Defendants from "offer[ing] evidence going only to a potential selective prosecution claim, or argu[ing] to the jury that they must or should be acquitted because they are being prosecuted selectively." (Mot. 26 (alterations added)). Once again, Defendants have not — aside from "public pronouncements" — asserted such a defense, nor moved to dismiss the Indictment on such ground. (*Id.* 25). But the Government worries that Defendants will argue to the jury "that they are being targeted for impermissible reasons, in particular their faith." (*Id.*).

Much of the Government's request hinges on the well-settled proposition that "[s]elective prosecution is a defect that has no bearing on the determination of a defendant's factual guilt, and, thus, is an issue for the district court to decide, not the jury." *United States v. Medina*, 631 F. App'x 682, 686 (11th Cir. 2015) (alteration added; citing *United States v. Jones*, 52 F.3d 924, 927 (11th Cir. 1995)). To the extent Defendants might suggest to the jury that they should be acquitted based on a theory of selective prosecution, that would plainly be inappropriate. *See id.*; *United States v. Chugay*, No. 21-10008-cr, 2022 WL 1782583, at *2 (S.D. Fla. June 1, 2022) (noting "selective prosecution is a matter for the Court to decide, not the jury"). Thus, as with the

Government's request regarding an RFRA defense, this request is granted, and Defendants may not put the actual question of a selective prosecution defense to the jury.

Nonetheless, the Court can envision other scenarios where Defendants might wish to present potential evidence of their being targeted — for example, to expose the bias of certain witnesses. *See Medina*, 631 F. App'x at 685–86 (explaining that the court retains "discretion" over the admissibility of evidence during cross-examination). Thus, this request is granted in part, as described above. But the Court will not yet exclude all references to Defendants being "targeted" (Mot. 25) — especially given that, once again, the Government fails to identify the specific evidence it wishes to exclude from trial, *see Holley*, 2021 WL 5299836, at *4.

7. *Evidence in furtherance of a justification or necessity defense.*

Finally, the Government seeks to preclude Defendants from raising a defense of justification or necessity. (*See* Mot. 26–28). This last request mostly continues the theme of curtailing Defendants' ability to mention or present argument regarding their religious beliefs. (*See id.* 27 (asking the Court to preclude Defendants from arguing "their conduct was necessary, or [that] it was morally, politically, or religiously justified" (alteration added; citation omitted)). Again, Defendants have not indicated that they intend to raise this defense; regardless, the Court sees little reason to decide the issue now and instead reserves determination of the issue for trial, where Defendants shall have a chance to offer evidence to support the defense. *See, e.g.*, *United States v. Singer*, 963 F.3d 1144, 1162 (11th Cir. 2020) (explaining that "a criminal defendant has a right to a jury instruction on his proposed theory of defense, provided that theory of defense is a valid one and some evidence at trial supports the instruction" (citation omitted)).

Admittedly, the Government is correct that "the Eleventh Circuit [] generally require[s] a showing of 'extraordinary circumstances'" in order for a defendant to raise a defense of

justification or necessity. (Mot. 27 (alterations added; quoting *United States v. Deleveaux*, 205 F. 3d 1292, 1297 (11th Cir. 2000))). Should Defendants provide sufficient evidence at trial to support those extraordinary circumstances, then the Court will give the appropriate instruction to the jury; should Defendants fail to do so, then the Court will not. *See Singer*, 963 F.3d at 1162; *United States v. Lanzon*, 639 F.3d 1293, 1302 (11th Cir. 2011). But "determin[ing] the sufficiency of the evidence or merits" of the defense — especially based solely on the Government's one-sided description — is not an appropriate use of a motion *in limine*. *Soliday*, 2011 WL 1837807, at *1 (alteration added; citation omitted). Accordingly, the Court will not preemptively exclude this defense, and the Government's request is denied.

### III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Government's Motion *in Limine* **[ECF No. 155]** is **GRANTED in part** and **DENIED in part**, as described above.

**DONE AND ORDERED** in Miami, Florida, this 12th day of June, 2023.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:   counsel of record
      Defendants, *pro se*